Filed 12/19/17; Certified for Publication 1/10/18 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| In re JACKIE ROBINSON<br><br>On Habeas Corpus. | F071466<br><br>(Super. Ct. No. 14CRWR681921)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Fresno County.  Arlan L. Harrell, Judge.

Rachel Lederman, under appointment by the Court of Appeal, for Appellant.

Kamala D. Harris, Attorney General, Ismael A. Castro and Brenda A. Ray, Deputy Attorneys General, for Respondent.

–ooOoo–

**INTRODUCTION**

Appellant Jackie Robinson is a patient at the Department of State Hospitals–Coalinga (DSH–C or hospital) detained under California's Sexually Violent Predator Act (SVPA; Welf. & Inst. Code, § 6600 et seq.).  He seeks the return of items considered contraband by the DSH–C.  Robinson filed a petition for writ of habeas corpus seeking the return of the confiscated items, as well as compensation for any lost or destroyed property.

Following an evidentiary hearing, the court granted Robinson's petition in part and denied the petition in part.  The court denied Robinson's petition to the extent he argued

the disputed items were improperly seized, but granted the petition on the basis that the indefinite retention of Robinson's property violated Robinson's right to due process. The court ordered the DSH–C to allow Robinson to mail the disputed items, at his own expense, to a party of his own choosing outside the hospital.

On appeal of his petition for writ of habeas corpus, Robinson claims the DSH-C should remove the contraband components from the confiscated items and return them to him. We affirm.

## FACTUAL AND PROCEDURAL HISTORY

Robinson was adjudicated a sexually violent predator (SVP) over whom the Department of State Hospitals has custody pursuant to the SVPA. He has been detained at DSH–C since 2007. Between 2011 and 2013, the DSH–C staff seized and held various items of Robinson's personal property. The DSH–C maintained the confiscated property was contraband.

On January 16, 2014, Robinson filed a petition for writ of habeas corpus in the Fresno Superior Court, alleging his property was being improperly withheld.

On February 26, 2014, the court ordered the DSH–C to file an informal response. On April 1, 2014, the DSH–C filed its response. Robinson filed a reply on April 7, 2014.

On May 1, 2014, the court issued an order to show cause addressing Robinson's claim that his personal property was being improperly withheld.

On June 24, 2014, the DSH–C filed a return. Robinson filed a traverse on October 7, 2014.

The court conducted an evidentiary hearing on December 12, 2014, and January 9, 2015.

On January 26, 2015, the DSH–C submitted a declaration and further briefing. On January 30, 2015, Robinson filed a response.

On March 3, 2015, the superior court partially granted and partially denied Robinson's petition. According to the court, there were six items in dispute: one Seagate

2.

portable hard drive, one SanDisk 16 GB micro SD card, one silver Dell Inspiron laptop computer, one Kingston 16 GB micro card, one silver PlayStation Portable (PSP) gaming device, and one black PSP. The court found the laptop computer and the two PSP's were contraband. Other items seized, including the portable hard drive and the memory cards, were not contraband in and of themselves, but because of the software and materials they contained. The court held the indefinite retention of Robinson's property violated his due process rights and ordered the DSH–C to allow Robinson to mail the confiscated items to a person of his choosing outside of the hospital at Robinson's own expense.

On April 20, 2015, Robinson filed a timely notice of appeal.

## DISCUSSION

### A.      Background

#### 1.      The DSH–C's Contraband List

Civil detainees confined to the Department of State Hospitals are subject to restrictions as to the property they may possess. (Welf. & Inst. Code, § 7295, subd. (a).) By statute, the Department of State Hospitals is required to keep a list of items deemed contraband at every state hospital. (*Id*., subd. (b).) The list must be posted to each state hospital's Web site and displayed prominently "in every unit of the hospital and throughout the hospital." (*Id*., subd. (g), see *id*., subd. (h).) "Contraband" refers to any articles or goods that a patient is prohibited from having because those articles or goods pose a risk to the safety and security of the facility. (*Id*., subd. (i).)

Patients committed pursuant to the SVPA are also not allowed to access the Internet. (Cal. Code Regs., tit. 9, § 891.)[1] In addition, as civil detainees, they are prohibited from possessing "[a]ny electronic devices that meet the criteria as outlined in … Section 4350." Section 4350 prohibits electronic devices with wireless capabilities:

---

[1]Further statutory references are to title 9 of the California Code of Regulations unless otherwise indicated.

"Electronic devices with the capability to connect to a wired (for example, Ethernet, Plain Old Telephone Service (POTS), Fiber Optic) and/or a wireless (for example, Bluetooth, Cellular, Wi-Fi [802.11a/b/g/n], WiMAX) communications network to send and/or receive information are prohibited, including devices without native capabilities that can be modified for network communication. The modification may or may not be supported by the product vendor and may be a hardware and/or software configuration change. Some examples of the prohibited devices include desktop computers, laptop computers, cellular phones, electronic gaming devices, personal digital assistant (PDA), graphing calculators, and radios (satellite, shortwave, CB and GPS)." (§ 4350.)

## 2. Administrative Directive 654 and the Moratorium

In July 2006, DSH–C patients were permitted to own and possess their own laptop computers, computer hardware, and computer accessories and software through a test program under Administrative Directive (AD) 654. However, AD 654 also placed limits on patients' use of personal computers. The directive prohibits any "hardware, accessory or software, or media" that enables "[p]rivate communication with other parties by personal computer or electronic device," as well as "[g]ames, movies, [or] electronic images that depict overt sexual acts or violence with adults and children." AD 654 also prohibits tampering with an individual's computer and loaning or utilizing another individual's computer.

In February 2007, the DSH-C issued a moratorium on the purchase of computer equipment and software previously permitted under AD 654. The order noted a "high rate of policy violations," which included: "Widespread distribution of pornographic material," "[a]udio recording of staff & individual conversations," "[w]idespread illegal distribution & sharing of copyright protected materials," "[w]idespread distribution & sharing of data encryption software," "[w]idespread distribution & sharing of data concealing software," and the possession and use of "[c]omputerized street map & atlas software."

Following the moratorium, the DSH–C's contraband list (revised Aug. 2, 2012) prohibited "LCD, battery operated devices including recording or electronic or

4.

mechanical transmitting devices," "[a]ny electronic devices that meet the criteria as outlined in … Section 4350," "[d]esktop type computers of any type," and "MP3 players or other devices with voice recording capability." In addition, the Department of State Hospitals statewide property contraband list (revised Apr. 2, 2014) prohibited the following: "Electronics with wireless capabilities, including but not limited to cell phones, PDAs, tablets and videogame systems with Internet capabilities to comply with … section 4350. Electronics with external audio or video recording capability …."

## B. Legal Analysis

Robinson filed a petition for writ of habeas corpus in the trial court, challenging the seizure of his property and seeking the return of the confiscated property. The trial court determined (1) the seizure of the contested property was proper because it is contraband, and (2) the indefinite retention of Robinson's property violates his right to due process. The trial court ordered the DSH–C to allow Robinson to mail the disputed items to a party of his choosing outside of the hospital, at his own expense. We conclude substantial evidence supports the trial court's finding the contested items are contraband. We further conclude the court did not abuse its discretion by holding Robinson was not entitled to the return of his confiscated property.

### 1. The Contested Property Is Contraband

On review from the granting of a writ of habeas corpus, we apply the substantial evidence test to pure questions of fact and independently review questions of law. (*In re Corona* (2008) 160 Cal.App.4th 315, 320.) Here, the trial court found the challenged items were contraband. We conclude substantial evidence supports the trial court's determination.

#### a. *The Operational Devices*

The Attorney General categorizes the contested property by whether it is an operational device or a storage device. For purposes of simplicity, we do as well.

We begin our analysis with the operational devices confiscated from Robinson. These devices include: a Dell laptop computer, a silver PSP gaming device, and a black PSP gaming device. At the evidentiary hearing, Sergeant Jerry Duvall of the Department of Police Services at DSH–C testified about the nature of the confiscated property. Duvall had examined the property after it was confiscated.

With respect to the PSP's, Duvall testified the silver PSP was capable of accessing the Internet under the right conditions, and the black PSP had a built-in microphone and video camera. SVP's are prohibited from accessing the Internet (§ 891), and recording devices are prohibited in the hospital pursuant to the DSH–C's contraband list.

With respect to the laptop computer, the court noted the laptop had been modified so as to include a modem. Duvall opined the laptop was contraband under section 4350 and under the hospital's contraband policy because with the proper software, it was capable of accessing the Internet. Section 4350 prohibits "devices without native capabilities *that can be modified* for network communication." (§ 4350, italics added.) Further, section 4350 specifically lists laptop computers and electronic gaming devices as examples of prohibited devices under the statute. (§ 4350.)

Robinson asserts the laptop is not prohibited if its Internet capability is removed. Thus, Robinson appears to suggest so long as a device is capable of being modified so that it is no longer contraband, it should not be considered contraband. We reject his argument.

The plain language of section 4350 prohibits devices that *can* be modified to access the Internet, not simply devices presently capable of accessing the Internet. Nonetheless, Duvall testified defendant's laptop was capable of accessing the Internet. Thus, the device is contraband under the plain language of section 4350. Robinson does not direct this court to authority stating the DSH–C must modify the laptop to remove all objectionable material or components under the contraband list before determining

6.

whether the item is, in fact, contraband.  Thus, contrary to Robinson's assertion, the superior court did not err in concluding the laptop is contraband.

### b.    *The Storage Devices*

Next, we turn to the storage devices confiscated from Robinson.  These items include:  a Seagate portable hard drive, a Kingston 16 GB memory card, and a SanDisk 16 GB SD card.

With respect to the portable hard drive, Duvall noted several pieces of software of concern on the hard drive, including encryption software, a program used to delete Internet history and temporary files, and tethering software.  Tethering software, when used in conjunction with a cell phone that has Internet access, can be used to enable a computer to access the Internet.  Encryption software permits a user to prevent others without a password from accessing a file.  Although the portable hard drive is not prohibited by the DSH–C, the software on the hard drive is considered contraband under AD 654 and section 4350.  According to Duvall, these items can be used to gain access to the Internet, engage in secret communications, and can affect the safety and security of the hospital.

As to the Kingston 16 GB memory card, Duvall testified the memory card contained adult pornography, tethering software, and a "torrent reader," a file-sharing resource.  AD 654 prohibits "hardware, accessor[ies] or software, or media which enables the Individuals [patients] [¶] [p]rivate communication with other parties by personal computer or electronic device, via any form of wired or wireless capability."  The tethering software would allow access to the Internet if the card is inserted into another cell phone or device, such as a laptop computer.  Duvall explained patients had used Internet access to obtain aerial maps of the hospital and the surrounding areas, patients had tried to Google-search staff and access the staff's Facebook accounts, and they had coordinated the introduction of contraband into the hospital through access to Internet and e-mail.  Further, Duvall stated a torrent reader permits users to share contraband or

even illegal files via peer-to-peer networks. He had previously seen users share child pornography using a torrent. Thus, the Kingston memory card was contraband because of the software it contained.

With respect to the SanDisk 16 GB Micro SD card, Duvall opined although the memory card itself was not contraband, the contents of the card violated AD 654 and section 4350. The card contained a Google Maps application, which would permit a user to have access to local area maps.

Officer Ted Simon, who had also inspected the memory card, testified the card also contained pictures of Robinson with another patient at DSH–C, as well as pictures of the interior of DSH–C. Simon further explained the card contained prohibited software, including a deleted file recovery program, some file sharing applications, and a couple of third-party search engines. Based on Duvall's and Simon's testimony, we find there is ample evidence to support the conclusion the portable hard drive and memory cards confiscated from Robinson are contraband.

Robinson contends electronic devices that do not have the capability to connect to the Internet are not contraband. He notes the DSH–C's contraband list prohibits desktop computers of any type and devices with recording capability, but does not list laptops, hard drives, SD cards, or PSP's as contraband per se. His argument is without merit.

Whether or not a device is capable of connecting to the Internet is not the exclusive consideration in determining if it is contraband. The storage devices contain pornography, encryption software, a torrent reader application, third-party Internet search engines, and a Google Maps application. Some of these applications, with the right equipment, enable Internet access, which is indisputably a violation of section 4350. Because the foregoing applications and materials are plainly prohibited under AD 654, the hospital's contraband list, or section 4350, we reject Robinson's argument.

8.

### 2.     Robinson Is Not Entitled to the Return of His Confiscated Property

Robinson contends even if the confiscated property is contraband, the objectionable materials or components should be removed and the property returned to him.  Robinson asserts there is insufficient evidence to support the superior court's conclusion the confiscated property did not have to be returned to him.  His argument turns the appropriate analysis on its head.

On appeal, it is Robinson's burden to prove the superior court erred.  Insofar as Robinson fails to direct this court to any legal authority to support his contention, we find the trial court exercised its discretion appropriately in determining he was not entitled to the return of his confiscated property.

#### a.     *Legal Principles*

"Persons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish."  (*Youngberg v. Romeo* (1982) 457 U.S. 307, 321–322.)  SVP's, who are confined for nonpunitive purposes, "have a substantive due process right to be free from restrictions that amount to punishment."  (*Allen v. Mayberg* (9th Cir. 2014) 577 Fed.Appx. 728, 732.)  At the same time, these detainees may properly be subject to institutional regulations.  "[R]estrictions that have a legitimate, non-punitive government purpose and that do not appear excessive in relation to that purpose are permissible."  (*Ibid*.; see *Telucci v. Withrow* (E.D. Cal., May 19, 2016, No. 1:16-CV-00025-JLT (PC)) [2016 U.S. Dist. Lexis 66334 at p. *7; 2016 WL 2930629 at p. *2] ["Restrictions imposed on SVPs need not be the least intrusive or those that the court agrees with as long as they advance a legitimate interest of the hospital"].)

#### b.     *Legal Analysis*

Here, the evidence adduced at the evidentiary hearing supports the conclusion the property was confiscated from Robinson as contraband based on legitimate safety concerns.  For example, devices that may be modified to permit Internet access may allow patients to share pictures of other patients, to Google hospital staff, and to view

9.

maps and aerial photographs of the hospital and surrounding areas. This puts the hospital staff and patients at risk of extortion, may result in a violation of patients' right to privacy, or may increase a patient's risk of escape. Further, applications permitting patients to discretely communicate and to share electronic files with one another, or to delete content from an accessing device and to encrypt files, may be used by patients to share illegal or contraband files, such as child pornography. Thus, the contraband restrictions present here are based on a legitimate, nonpunitive government purpose.

Robinson contends the contraband should be modified and returned to him. However, in the absence of some duty by the DSH–C, statutory or otherwise, Robinson does not have the right to have his seized possessions modified and returned to him.

We note title 15 of the California Code of Regulations, which governs inmates at correctional facilities, provides multiple methods for the disposal of contraband. None of these methods include modifying contraband so that it can be returned to an inmate. An inmate's contraband may be disposed of in one of the following ways: "(1) Mail the item to an address of an individual willing to accept the personal property … at the inmate's expense.… [¶] (2) Return the item to the sender … at the inmate's expense.… [¶] (3) Donate the item to a charitable organization …. [¶] (4) Donate the item to the institution/facility. [¶] (5) Render the item useless and dispose of it according to institution/facility procedures." (Cal. Code Regs., tit. 15, § 3191, subd. (c)(1)-(5).)

Robinson, a civil detainee, is not governed by title 15 of the California Code of Regulations. Nonetheless, we find title 15 persuasive insofar as it fails to show inmates are entitled to the return of property confiscated as contraband. "[W]here specific standards are lacking, courts may look to decisions defining the constitutional rights of prisoners to establish a constitutional minimum for the rights of persons detained under a civil commitment scheme." (*Telucci v. Withrow*, *supra*, No. 1:16-CV-00025-JLT (PC) [2016 U.S. Dist. Lexis 66334, at p. *11; 2016 WL 2930629, at p. *4].)

10.

Even though civil detainees "are entitled to more considerate treatment and conditions of confinement than criminals" (*Youngberg v. Romeo*, *supra*, 457 U.S. at p. 322), there are practical limitations precluding Robinson's requested relief. For example, Duvall testified deletion of the contraband on Robinson's laptop would require looking at every file individually to determine whether it violates the hospital's policy. Even then, it could take hours to delete the data, depending on the number of files on Robinson's hard drive, and could result in the inadvertent deletion of noncontraband materials.

Robinson suggests software could be purchased to automate this process. We decline to impose such an unreasonable institutional burden on the DSH–C. Even if this were feasible, it would be unreasonable to require the DSH–C to modify all confiscated property so as to remove any contraband components or materials.

In the absence of authority showing civil detainees are entitled to the return of their confiscated property, we reject Robinson's assertion he was entitled to the return of his property. We conclude the trial court did not err in declining his request for the return of his property.

**DISPOSITION**

The superior court's order is affirmed.

_____

PEÑA, J.

WE CONCUR:

_____

HILL, P.J.

_____

DETJEN, J.

11.

Filed 1/10/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| In re JACKIE ROBINSON<br><br>On Habeas Corpus. | F071466<br><br>(Super. Ct. No. 14CRWR681921)<br><br>**ORDER GRANTING REQUEST FOR PUBLICATION** |

      As the nonpublished opinion filed on December 19, 2017, in the above entitled matter meets the standards for publication specified in the California Rules of Court, rule 8.1105(c), it is ordered that the opinion be certified for publication in the Official Reports.

                                         PEÑA, J.

WE CONCUR:


HILL, P.J.


DETJEN, J.